UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT J. WALKER,

                            Petitioner,

-vs-                                                      Case No.  8:05-cv-1539-T-17MAP

SECRETARY, DEPT. OF CORRECTIONS,

                            Respondent.

_____

## **ORDER**

This cause is before the Court on Petitioner Robert J. Walker's 28 U.S.C. § 2254

petition for writ of habeas corpus.  Petitioner challenges his conviction and sentence

entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida.

BACKGROUND

Walker was charged in a fifth amended information in case no. 97-06680 with DUI

manslaughter, leaving the scene of an accident involving death, driving while licensed

suspended or revoked with death or serious injury, and resisting an officer without violence.

Represented by retained counsel, Walker proceeded to jury trial held December 13-15,

1999, before the Honorable Robert Young. Walker was found guilty as charged. On

January 21, 2000, Walker was adjudicated guilty in accordance with the verdict of DUI

manslaughter and was sentenced to 19 years incarceration.  In addition, the state trial court judge adjudged Walker guilty of the lesser misdemeanor offenses of driving with a suspended license and leaving the scene of an accident. On all misdemeanor counts, Walker was adjudicated guilty and sentenced to time served in the county jail.

Walker appealed, arguing the state trial court erred in denying his motion to suppress a statement made to police. He also contended the written judgment did not conform to oral pronouncements. On May 9, 2001, the state district court of appeal per curiam affirmed the convictions, but reversed and remanded with directions to the trial court to enter a new judgment consistent with the orally pronounced adjudications. *Walker v. State*, 784 So. 2d 1243, 1244 (Fla. 2d DCA 2001). No rehearing was sought, and Walker did not seek further review.  On June 22, 2001, the state trial court conformed the judgment pursuant to the decision on appeal.

Walker filed a pro se motion for postconviction relief dated May 7, 2002, under Florida Rule of Criminal Procedure 3.850 raising seven grounds for relief. Resp. Ex. 6, V 1 R 109-143.  On July 15, 2002, the state trial court judge, Honorable Judith Flanders, summarily denied claims seven and eight summarily and directed the State to respond to the remaining claims. Resp. Ex. 6, V 1 R 145-155. Following the State's response, Resp. Ex. 6, V 2 R 166-186, the state trial court, on February 28, 2003, summarily denied claims one, two, and five. An evidentiary hearing was directed on Walker's claims in which he faulted counsel for not investigating and calling witnesses for the defense (claim three); not calling an expert to rebut the state's expert (claim four); and not investigating the state's witnesses properly (claim six). Resp. Ex. 6, Supp R 267-290.

Walker was appointed counsel, and an evidentiary hearing was held on April 12, 2004. Following submission of written closing arguments, the state trial court, on April 23, 2004, denied the grounds on which the evidentiary hearing was held. Resp. Ex. 6, V 2 R 257-258.

Walker appealed the adverse result.[1] On June 1, 2005, the state district court per curiam affirmed without written decision in case no. 2D04-2117. Walker v. State, 905 So. 2d 138 (Fla. 2d DCA 2005)[table]. The mandate issued June 23, 2005.

STANDARD OF REVIEW

Walker filed a pro se 28 U.S.C. § 2254 petition dated August 16, 2005. His petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996.[2]  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also, Bell v. Cone*,

---

[1] During the pendency of his rule 3.850 motion, Walker filed a pro se motion to correct illegal sentence dated July 23, 2004, under Florida Rule of Criminal Procedure 3.800(a). By order rendered August 19, 2004, the state trial court denied the motion without an evidentiary hearing. Walker appealed the summary denial. On March 30, 2005, the state district court per curiam affirmed with citation only in case no. 2D04-5774. *Walker v. State*, 2005 Fla. App. LEXIS 4318 (Fla. 2d DCA 2005). The mandate issued April 28, 2005.

[2] The AEDPA imposes a one-year statute of limitations on all habeas corpus petitions. 28 U.S.C. § 2244(d)(1). Walker's conviction became final for purposes of 2244(d) upon expiration of the time for seeking certiorari review following the decision in his direct appeal. Finality was not delayed by ministerial conforming of the judgment to the oral pronouncement. Walker's rule 3.800(a) and 3.850 motions are treated as "properly filed" for tolling purposes only, *See Artuz v. Bennett*, 531 U.S. 4 (2000). Excluding the periods during which such were pending, see 28 U.S.C. § 2244(d)(2), yields the conclusion Walker allowed an aggregate period which was not tolled of less than a year to elapse following finality of the judgment before constructively filing his federal petition.

-3-

160 L. Ed. 2d 881, 125 S. Ct. 847 (2005)(habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]). Pursuant to 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[3]

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson v. Haley*, 353 F.3d 880, 890-91 (11th Cir. 2003). In addition, a

---

[3]    "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. *Lockyer v. Andrade*, 538 U.S.63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. *Mitchell v. Esparza*, 540 U.S. 12 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308-10 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the  state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Brown v. Payton*, 125 S.Ct. 1432, 1438 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Secy of Dept. of Corrections*, 331 F.3d 764, 775-76 (11th Cir. 2003).

"A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 125 S.Ct. at 1439. An objectively unreasonable application of precedent occurs when (1) a state court identifies the correct legal rule but unreasonably applies it to the facts or (2) a state court either unreasonably extends a legal principle from precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1141 (11th Cir. 2005).

petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). *Williams v. Taylor*, 529 U.S. at 433-34.

## EXHAUSTION AND PROCEDURAL DEFAULT

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364, 365 (1995)("Exhaustion of state remedies requires that the state prisoner fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights").

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138.

"The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313). Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson v. Campbell*, 353 F.3d at 892. This exception is only available "in an

extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892.

The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted). The *Schlup* Court stated the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup*, 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

The Court will not presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief which is essentially a summary

dismissal. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman*, 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

## DISCUSSION

In his present federal petition, Walker raises five claims of ineffective assistance of counsel. In ground one, Walker faults his trial counsel for not calling Walker to testify. In ground two, Walker claims his counsel misled him regarding his right to testify in his own behalf. In ground three, Walker contends his counsel refused to investigate and call known witnesses for the defense. In ground four, he faults his counsel for not procuring a toxicologist to refute the testimony of the state's expert who, according to Walker, would have purportedly cast doubt on the state's case. In ground five [in his habeas memorandum], he complains counsel did not seek a *Frye*[4] hearing regarding the blood alcohol evidence.

All grounds in the petition are procedurally barred. Walker raised his claims in his rule 3.850 motion. His claims of proposed omission contained in grounds one, two, and five of the instant petition were summarily denied by the postconviction court, and the claims raised in his third and fourth grounds of the federal petition were denied after an evidentiary hearing. On appeal, Walker through collateral appellate counsel, urged an abuse in the state trial court's appointment of the public defender's office to represent him in his

---

[4] *Frye v. United States,* 293 F.2d 1013 (D.C. Cir. 1923).

collateral appeal. Walker, however, did not specifically challenge the decision on each of his rule 3.850 claims of omission of trial counsel. Therefore, all of the claims are procedurally barred.

In Florida, exhaustion of Rule 3.850 claims includes an appeal from the denial of the claims. *Leonard v. Wainwright*, 601 F.2d 807 (11th Cir. 1979). More particularly, when a Rule 3.850 motion has been denied after an evidentiary hearing, the applicable rule provides a briefing schedule. See Rule 9.141(b)(3)(C). Pursuant to state procedural rules, a waiver of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing. *See, e.g., Shere v. State*, 742 So.2d 215, 224 n.6 (Fla. 1999)("In a heading in his brief, Shere asserts that the trial court erred by summarily denying nineteen of the twenty-three claims raised in his 3.850 motion. However, for most of these claims, Shere did not present any argument or allege on what grounds the trial court erred in denying these claims. We find that these claims are insufficiently presented for review."); *see also, Duest v. Dugger*, 555 So. 2d 849 (Fla. 1990)("Duest also seeks to raise eleven other claims by simply referring to arguments presented in his motion for postconviction relief. "The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived").

Walker's postconviction appeal was from a Rule 3.850 order after an evidentiary hearing. Accordingly, he was obliged to file a brief upon appealing the denial of postconviction relief.  Because Walker only raised a claim of conflict of interest with regard

to his collateral counsel's appointment in his appellate brief, he abandoned other claims (those that were summarily denied and those that were denied after the evidentiary hearing).

By not timely raising his grounds in accordance with state procedural rules in the collateral appeal, Walker deprived the state courts of a "full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also, Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)). Dismissal for failure to exhaust is not appropriate, however, because the procedural default doctrine precludes federal review of all of Walker's grounds.

Walker cannot avoid his default because his election through collateral appellate counsel is not external to the defense. Walker's claim in his collateral appeal that his appointed Rule 3.850 counsel operated under a conflict does not constitute valid cause. There is no constitutional right to counsel in a collateral attack upon a criminal conviction. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Murray v. Giarratano*, 492 U.S. 1 (1989). Because Walker lacks a constitutional right to effective collateral counsel, he cannot rely on his claim of conflict of interest of his collateral counsel to excuse his default. Moreover, any such claim would not avoid his default because the default was worked by Walker's election on collateral appeal to promote only the claim of conflict of rule 3.850 counsel.

-10-

Even if he could show valid cause, Walker cannot avoid his default. Walker does not allege and meet the prejudice component of the *Wainwright v. Sykes* test. With regard to each ground, he does not plead an adequate basis meeting both prongs of *Strickland.* In addition, Walker does not qualify for the fundamental miscarriage of justice exception. He has no new and reliable evidence of actual innocence. *Schlup*, at 321-22.

Alternatively, the state court's decision to reject Walker's claims that his trial counsel rendered ineffective assistance is not contrary to or an unreasonable application of federal law or an unreasonable application of the law to the facts. See 28 U.S.C. § 2254(d). "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). Walker's case is not one of those few.

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

Strickland requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998)("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691. Walker must demonstrate that the error prejudiced the defense to meet the standard for a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 692. To meet this burden, Walker must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Walker cannot meet this burden by simply showing that, in hindsight, the avenue chosen by counsel proves ineffective.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord, Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or "what is prudent or appropriate, but only what is constitutionally compelled.") (en banc ) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

As stated above, Walker must prove that the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state trial court recognized that Walker's claims are governed by *Strickland*. Consequently, Walker cannot meet the "contrary to" test in 28

U.S.C. § 2254(d). Moreover, the state court's decision on each of his grounds constituted a reasonable application of *Strickland* and a reasonable determination of the facts.

Even if Walker's claims were not procedurally barred, Walker would not be entitled to relief on the merits.

Grounds One and Two

In ground one, Walker faults his counsel for not calling him to testify. Walker contends his counsel failed to discuss with him trial strategy or possible theories of defense. Claiming he consumed various alcoholic beverages after the collision, Walker ostensibly seeks to show prejudice because he did not have an opportunity to provide an explanation at trial.  In ground two, Walker accuses his counsel of misleading him about his right to testify. Walker charges counsel dissuaded him from taking the stand by advising the State would use prior crime evidence against him and the defense would lose the second closing argument. Walker asserts the state did not file a notice to use other crime evidence. He also charges that counsel did not advise him that his testimony would establish a defense he was not intoxicated before and during the accident. Following the state's response to his rule 3.850 claims, the state trial court denied these grounds summarily, stating, in relevant part:

> In ground one, Defendant claims his trial counsel did not call him to testify at trial. In ground two, Defendant claims trial counsel never prepared defendant to testify at trial. The Court ordered the State to respond, and the State addressed claims one and two together. In grounds one and two, the State argues counsel made a tactical decision for Defendant not to testify due to the inconsistencies in Defendant's taped statement. Additionally, the State argues Defense counsel was unable to prepare Defendant to testify because Defendant was uncooperative and had no relationship with his trial counsel. The State further claims the Court questioned Defendant about whether he wanted to testify, and Defendant chose not to. The Court agrees with and

-14-

incorporates the State's Response herein. (*See* State's Response, attached). Accordingly, grounds one and two are hereby DENIED. . . . .

Resp. Ex. 6. Supp R 267-68.

To the extent Walker seeks substantive review of a constitution claim of denial of the right to testify, such is waived and procedurally barred. As the state trial court's order, and the state record reflects, Walker waived his right to testify, after the state trial court assured itself of his awareness of his right to take the stand. Resp. Ex. 1, V 4, R 506. By electing not to testify, Walker waived and abandoned any claim that he was denied the constitutional right to testify in his own behalf. *See e.g., Stewart v. LaGrand*, 526 U.S. 115, 120 (1999)(petitioner waived claim that execution by lethal gas violated Eighth Amendment by choosing to be executed by lethal gas rather than lethal injection). Walker cannot avoid his default by his claim of omission of counsel where he elected not to testify with awareness of such right.

Moreover, it is apparent even from counsel's remarks at trial that this experienced[5] counsel made an informed recommendation regarding whether Walker should take the stand. Resp. Ex. 1, V 4 R 506. Walker's counsel indicated he had discussed with him the options and counsel's recommendation regarding the decision whether to testify. *Id.* An evidentiary hearing is not necessary to determine the specifics of counsel's advice or to

---

[5] The probe on other grounds bears out counsel was indeed experienced. His testimony reflects 90% of his practice over a fifteen-year period consisted of criminal cases. Resp. Ex. 6, V 2 R 204. He tried in excess of 150 jury trials, about 25% of which were complex, and six or seven of which involved capital cases in which the state was seeking the death penalty. Resp. Ex. 6, V 2, R 247-8. The strong reluctance to second-guess strategic decisions is even greater where, as here, those decisions were made by experienced criminal defense counsel. *William v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999). *Accord, e.g., Spaziano v. Singletary*, 36 F.3d 1028, 1040 (11th Cir. 1994) [("[T]he more experienced an attorney is, the more likely it is that his own experience and judgment in rejecting a defense without substantial investigation was reasonable under the circumstances." (internal quotations omitted).

evaluate the specific reasoning. An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. *Grayson v. Thompson*, 257 F.3d 1194, 1218 (11th Cir. 2001). Walker's self-serving rule 3.850 allegations, as well as those in his federal petition, do not suffice to overcome the strong presumption that counsel's advice regarding the decision whether to testify was in the exercise of reasonable professional judgment. *Strickland*, 466 U.S., at 690.

The relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001)(citing *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). The trial record, as well as counsel's testimony on other grounds, reflects Walker's chosen defense was he was not the driver, and not that he was not impaired at the time of the collision. Resp. Ex. 6, V 2 R 223. Under the circumstances, at least one reasonably competent attorney could view as inconsistent or unpalatable to a jury a defense premised also, or alternatively, on a claim that Walker drank alcoholic beverages after the accident. Because his allegations do not suffice to show no reasonably competent attorney could have recommended Walker not testify, Walker cannot show any deficiency in counsel's advice regarding his decision whether to testify in his own behalf.

The state trial court need not have reached Walker's contention that his counsel advised him the State could elicit prior crime evidence or that the defense would lose the second closing argument should Walker testify. Both grounds fail scrutiny under the prejudice prong without addressing the performance prong.

Walker's vision of a more favorable outcome with his testimony is unrealistic. As pointed out by the State's response, there were inconsistencies in his statements to police, including the number of drinks he consumed. In addition, he would have been subject to cross-examination about his statement to police in which he did not indicate he drank after the collision. Resp. Ex. 6, Supp R 277.

In contrast, the state's case was compelling. Mark Reed saw Walker's black Chevrolet strike the victim who was walking off the roadway. Resp. Ex. 1, V 4 R 465-64, 468. Although he could not identify Walker, he saw only one person inside vehicle. Resp. Ex. 1, V 4 R 466, 470. Paul Smith identified Walker as the driver of the car he had seen moments before the accident, Resp. Ex. 1, V 2 R 209, 219, and two individuals, Melissa Tellez and Darrell Carver, observed him driving the damaged car back to the house a short time after the accident. Resp. Ex. 1, V 2 T 232-234, 238, V 4 448, 459.

The state also adduced compelling evidence showing Walker was impaired at the time he struck the victim. Among other things, extrapolation revealed Walker's blood alcohol level at the time he struck the victim was well over Florida's legal limit regarding blood alcohol level for driving. Resp. Ex. 1, V 4 R 420-23, 486- 489. Carter's testimony reflects Walker was driving recklessly; it appeared Walker was going to hit the rear end of Tellez's car. Resp. Ex. 1, V 4 T 458-59. When Walker drove by Carter, the latter heard Walker yell obscenities. Carter indicated Walker's speech was "just a little slurred" and his face was flushed. Resp. Ex. 1, V 4, R 450, 451. After Carter assisted in pointing out Walker's location in some tall grass, he could smell the odor of alcohol on Walker. Walker's

eyes were glassy, his face was flushed, and he staggered as he walked. Resp. Ex. 1, V 4, T 458.

When law enforcement encountered Walker, he had an odor of alcohol. Resp. Ex. 1, V 3 R 385. His eyes were watery and bloodshot. Resp. Ex. 1, V 3 R 334, 335. Roy Rogers' testimony reflects Walker did not start drinking when he returned home after Walker hit the victim. Resp. Ex. 1, V 3 T 256. In view of the overwhelming evidence of his guilt which bore out he was intoxicated when he struck the victim, it is objectively reasonable to conclude that even if Walker had testified as proposed, there was no reasonable probability of a different result. Accordingly, disposal of his grounds on *Strickland's* prejudice prong is objectively reasonable.

Grounds one and two do not warrant habeas relief.

### Grounds Three and Four

Walker faults his counsel for not investigating and calling "known" witnesses. (habeas memo at p. 12). In ground four, Walker faults his counsel for not calling an expert in toxicology to rebut the testimony of the state's expert. Walker was given the opportunity to establish the factual underpinnings of these claims at an evidentiary hearing;  he failed to do so. As the final Rule 3.850 denial order reflects, Walker's Rule 3.850 motion speculated about what testimony he was deprived of as a result of the proposed omission of counsel. However, he presented no evidence that would establish his claims. Resp. Ex. 6, V 2 R 254-255. Moreover, counsel's testimony reflects Walker, despite counsel's efforts, would not cooperate with counsel, and Walker did not credibly establish in state court, as a threshold factual matter, that his counsel refused to investigate and prepare a defense

as he suggested. Walker does not overcome the presumption of correctness of the state court's implicit findings in rejecting his claims. 28 U.S.C. §2254(e)(1). It is objectively reasonable to dispose of these grounds under *Strickland*'s deficiency prong.

Alternatively, these claims can denied under the prejudice prong. Walker failed to establish in his Rule 3.850 proceeding that but for the claimed omissions, there was any reasonable probability of a different outcome in his case.

Grounds three and four do not warrant habeas relief.

Ground Five

Walker faults his trial counsel for not pursuing a *Frye* hearing regarding the state's blood alcohol evidence. In denying this ground summarily, the state trial court stated, in relevant part:

> In ground five, Defendant claims counsel was ineffective for failing to file a pre-trial motion for a "*Frye*-hearing" in reference to blood alcohol evidence. The Court ordered the State to respond, and the State argues that a *Frye* hearing is a test for the reliability of scientific evidence, and is used to determine whether new or novel procedures are reliable enough for use, citing *Ramirez v. State*. 651 So.2d 1164 (1995). The blood tests used in this case were standard procedure and have been used since the 70's and 80's, depending on the test. Additionally, the State argues the State's expert in this case was certified by the State of Florida to run such tests, and that he had been found to be an expert in Florida 18 times. (*See* transcript pages 475-477, 481). Further, the State chose not to rely on the presumptions under the implied consent law, but relied strictly on the blood alcohol reading following the rules set forth in *Robertson v. State*, 604 So.2d 783 (Fla. 1992). The Court agrees with and incorporates the State's Response herein. Accordingly, Defendant is not entitled to relief, therefore ground five is DENIED. . . . .

Resp. Ex. 6, Supp R 269.

The Supreme Court held in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), that Federal Rule of Evidence 702 superseded *Frye*. However, in *Flanagan v.*

*State*, 625 So. 2d 827 (Fla. 1993), the Florida Supreme Court announced its continuing adherence to *Frye,* even though the state's rules of evidence are patterned after the federal rules. The Florida Supreme Court subsequently emphasized that the *Frye* test is utilized in Florida, despite the federal adoption of a more lenient standard in *Daubert. See Brim v. State*,  695 So. 2d 268 (Fla. 1997). However, *Frye* is only utilized where the science at issue is new or novel. *Brim*, 695 So. 2d at 271.

As the state decision reflects, the state trial court held the blood tests used in Walker's case had been standard procedure since the 1970's. Where, as here, a state court's adjudication of an ineffective assistance of counsel claim represents the resolution of an underlying state law issue, the Court owes a high degree of deference to that determination. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984), *modified*, 731 F.2d 1486, *cert. denied*, 469 U.S. 956 (1984). The state decision in Walker's case settles that as a matter of state law, the trial court was not obliged to conduct a *Frye* hearing before the state adduced testimony regarding Walker's blood alcohol level. Federal courts cannot review issues based solely upon state law. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983). Because the state court rejected his underlying arguments under Florida law, Walker can show neither deficiency nor prejudice with regard to his claim.

Ground five does not warrant habeas relief.

## Closing Thoughts

Finally, with regard to his grounds which were summarily denied in the state trial court, Walker had full and fair opportunity to allege all his factual underpinnings, if any, for

each claim in his Rule 3.850 motion. He also had a full and fair opportunity to develop any underpinnings for the claims that were the subject of the state evidentiary hearing.  Walker is now barred by 28 U.S.C.. § 2254(e)(2) from seeking an evidentiary hearing in this proceeding on any factual allegation not timely presented to the state trial court.  Failure to develop any such factual assertion in state court in support of his claims is solely attributed to Walker's lack of diligence.

Accordingly, the Court orders:

That Walker's petition is denied, with prejudice.  The Clerk is directed to enter judgment against Walker and to close this case.


## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v.*

*Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on June 18, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Robert J. Walker